UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JON ANTHONY LANDERS,

                    Plaintiff,

    v.                                              **DECISION AND ORDER**
                                                            14-CV-1090S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

    1.    Plaintiff Jon Anthony Landers challenges an Administrative Law Judge's ("ALJ") decision dated July 15, 2013, wherein the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act").  Plaintiff now contends that this determination is not based upon substantial evidence, and remand is warranted.

    2.    Plaintiff filed an application for disability insurance benefits under Title II and an application for supplemental security income under Title XVI of the Act on December 1, 2011, alleging a disability beginning on September 23, 2011.  The claim was initially denied on April 25, 2012.  Plaintiff thereafter requested a hearing before an ALJ, and, on May 29, 2013, Plaintiff appeared and testified in Buffalo, NY.  The ALJ subsequently found on July 15, 2013 that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request for review on November 13, 2014, rendering the ALJ's determination the final decision of the Commissioner.  Plaintiff filed the instant action on December 29, 2014.

3.     Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 10). Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5.     To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (R. 15.)[1]  He then made the following findings with regard to the five-step process set forth above:  (1) Plaintiff had not engaged in substantial gainful activity since September 23, 2011, the alleged date on which Plaintiff became disabled (id.); (2) Plaintiff's severe impairments include chronic obstructive pulmonary disease, cirrhosis of the liver and gastroenteritis, kidney disease, history of inguinal hernia, and alcohol abuse, as well as the non-severe impairments of lumbar spine injury and hypertension (R. 15-16); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 16-17); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations,[2] and that this RFC

---

[1] Citations to the underlying administrative record are designated as "R."
[2] The ALJ determined that Plaintiff can "sit for an entire eight-hour workday, with only normal breaks and meal periods; stand and/or walk for an entire eight-hour workday, with only normal breaks and meal periods; lift and carry 20 pounds occasionally, and ten pounds frequently[;] . . . should not work in unventilated work areas that contain high concentrations of dust, fumes, gases, and vapors[;] . . . should not engage in frequent, repetitive stooping, crouching, or climbing stairs[; and] . . . is limited to simple, repetitive, and routine tasks in a low contact work environment." (R. 17-18.)

4

precluded Plaintiff from performing his past relevant work as an automobile mechanic (R. 22); and (5) considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 23).

10. Plaintiff advances three challenges to the ALJ's decision. First, Plaintiff contends that the ALJ erred in failing to consider Plaintiff's depression as a "severe impairment" at step two of the five-step analysis. A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," including understanding and carrying out simple instructions and responding appropriately to others in usual work situations. 20 C.F.R. § 404.1520(c); § 404.1521. Assuming that Plaintiff's mental depression is, in fact, a severe impairment, the ALJ's failure to separately evaluate it as such at step two does not necessarily render the decision erroneous. See Buck v. Colvin, No. 14-CV-216S, 2015 WL 4112470, at *4 (W.D.N.Y. July 8, 2015).

An ALJ is required to explicitly identify all impairments supported by substantial evidence at step two, in order to avoid "prejudic[ing] the claimant at later steps in the sequential evaluation process." Lowe v. Colvin, No. 6:15-CV-06077(MAT), 2016 WL 624922, at *3 (W.D.N.Y. Feb. 17, 2016) (internal quotation omitted). "Any error in failing to identify a severe impairment, however, is harmless if that impairment is specifically considered during the subsequent steps." Morales v. Colvin, No. 13-CV-550S, 2014 WL 4829351, at *4 (W.D.N.Y. Sept. 29, 2014) (citing Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding an alleged step two error harmless because the ALJ considered the impairments found non-severe during subsequent steps)); see also

Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) ("[a]s a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless when it is clear that the ALJ considered the claimant's impairments and their effect on his or her ability to work during the balance of the sequential evaluation process") (internal quotations and punctuation omitted).

Although the ALJ did not identify depression as an impairment at step two, he does consider it throughout the remainder of the assessment. At step three, the ALJ evaluates Plaintiff's mental conditions under section 12.04 (affective disorders), which includes depressive syndrome. (R. 16-17); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. At step four, the ALJ's RFC assessment is replete with references to Plaintiff's depression, including: Plaintiff's testimony as to having been treated with medication for depression and anxiety (R. 18); his hospitalization on September 28, 2011, in which he was diagnosed with major depression (id.); his diagnosis on February 23, 2012 of moderate major depression in out-patient treatment (R. 19); and the diagnosis of Dr. Renee Baskin, consulting examiner, of depressed mood on April 20, 2012 (id.). Finally, the RFC itself accounts for Plaintiff's depression by limiting him to "simple, repetitive, and routine tasks in a low contact work environment." (R. 18.)

Because the ALJ already took the medical evidence of Plaintiff's depression into consideration when crafting the RFC, reviewing the record again would be unlikely to change his determination. Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010) (remand is not necessary when there is no reasonable likelihood that an ALJ's examination of the same evidence would change the RFC determination); see generally Henry v. Astrue, 32 F. Supp. 3d 170, 188-89 (N.D.N.Y. 2012) (ALJ found that Plaintiff's depression was a

"severe" impairment, and determined that Plaintiff retained the mental RFC to perform the full range of light simple work). Accordingly, any error in not listing the depression as a severe impairment at step two was harmless. Wells v. Colvin, No. 14-CV-197-JTC, 2015 WL 1280536, at *7 (W.D.N.Y. Mar. 20, 2015) ("Where the record establishes the presence of multiple impairments, and the ALJ finds at step two that some impairments (but not others) are severe, thereby allowing plaintiff's claim to proceed through the sequential evaluation process, any error in the ALJ's severity analysis must be considered harmless.").

11.  Second, Plaintiff contends that the ALJ erred by rejecting portions of two of the medical opinions in his RFC. An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. Specifically, Plaintiff can "sit for an entire eight-hour workday, with only normal breaks and meal periods; stand and/or walk for an entire eight-hour workday, with only normal breaks and meal periods; lift and carry 20 pounds occasionally, and ten pounds frequently[;] . . . should not work in unventilated work areas that contain high concentrations of dust, fumes, gases, and vapors[;] . . . should not engage in frequent, repetitive stooping, crouching, or climbing stairs[; and] . . . is limited to simple, repetitive, and routine tasks in a low contact work environment." (R. 17-18.) Plaintiff asserts that although the ALJ afforded "the greatest weight" to the opinions of Dr. Baskin, a consulting examiner, and Dr. Andrews, a review psychologist, when formulating

Plaintiff's RFC (R. 22), he failed to sufficiently incorporate certain aspects of their opinions into the RFC determination. In particular, Plaintiff contends that the RFC does not reflect both opinions' moderate limitations as to Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, and maintain regular attendance (R. 284, 308), nor Dr. Baskin's additional moderate limitations on Plaintiff's ability to make appropriate decisions and appropriately deal with stress (R. 284).

An ALJ should consider "all medical opinions received regarding the claimant." Yeomas v. Colvin, No. 13-CV-6276P, 2015 WL 1021796, at *15 (W.D.N.Y. Mar. 10, 2015) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). However, an ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations. See Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) ("although the ALJ did not discuss the moderate limitations assessed by [non-examining psychiatrist], he incorporated moderate limitations into his RFC by restricting [plaintiff] to jobs that require an individual to understand, remember and carry out simple instructions"). Plaintiff fails to demonstrate that these moderate limitations require the finding of a more limited RFC. The determination that Plaintiff is limited to "simple, repetitive, and routine tasks" accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance. See, e.g., Sipe v. Astrue, 873 F. Supp. 2d 471, 481 (N.D.N.Y. 2012) (moderate limitations in "relating to instructions, concentration, attendance" consistent with unskilled work). Similarly, the limitation to a "low contact work environment" accounts for his moderate

social limitations.  See, e.g., Wasiewicz v. Colvin, No. 13-CV-1026S, 2014 WL 5465451, at *5 (W.D.N.Y. Oct. 28, 2014) (ALJ accounted for moderate social limitations by requiring "no more than occasional contact with the public, coworkers, or supervisors"); Reilly v. Colvin, No. 1:13-CV-00785 MAT, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning").

Furthermore, although the RFC "may not perfectly correspond" with any one of the medical opinions, the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013).  The ALJ thoroughly discussed and considered Plaintiff's treatment history, his statements concerning daily activities, the lack of restrictions placed on Plaintiff by any of his treating doctors, as well as the medical opinions of Drs. Baskin and Andrews regarding Plaintiff's functional mental limitations, and incorporated them into the RFC.  (R. 18-22.)  Accordingly, the Court finds that the RFC is consistent with the record as a whole.  See Wasiewicz, 2014 WL 5465451 at *4-5, (citing Retana v. Astrue, No. 11-CV-00105-PAB, 2012 WL 1079229, at *1 (D. Colo. Mar. 30, 2012) (ALJ was not required to discuss thoroughly each moderate limitation; "ALJ's RFC adopted some of [doctor's] moderate limitations such as restricting plaintiff to unskilled work not involving complex tasks, reflecting plaintiff's moderate limitations in his ability to carry out detailed instructions and to maintain concentration for extended periods")).

12. Finally, Plaintiff contends that the ALJ failed to fully and properly assess Plaintiff's credibility, as required under the Social Security regulations and rulings.  "The

general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." Brown v. Colvin, 47 F. Supp. 3d 180, 186 (W.D.N.Y. 2014); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. § 416.929.

"The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." Brown, 47 F. Supp. 3d at 186 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); Meadors v. Astrue, 370 Fed. App'x 179, 184 n. 1 (2d Cir. 2010)). "[A]lthough an ALJ is required to consider all of the required credibility factors, he is not required to explicitly

discuss each one." Pratts v. Colvin, No. 14-CV-6176 CJS, 2015 WL 4276331, at *11 (W.D.N.Y. July 14, 2015) (citing Cichocki v. Astrue, 534 Fed. App'x 71, 76 (2d Cir. 2013) ("While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination[.]")).

In the present case, although the ALJ did not explicitly discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), the credibility assessment was nevertheless performed in accordance with the Second Circuit's guidance. See Cichocki, 534 F. App'x at 76. The ALJ noted Plaintiff's testimony about the limiting effects of his chronic obstructive pulmonary disease kidney disease, depression, and anxiety. (R. 18.) The ALJ then discussed treatment notes in the record indicating that Plaintiff was hospitalized for depression and alcohol dependence, as well as his visits to the emergency room for shortness of breath and abdominal pain. (R. 19-20.) The ALJ noted that this evidence reflected certain inconsistencies between Plaintiff's test results and his statements to medical sources, as well as Plaintiff's failure to quit smoking and alcohol consumption, despite his doctors' advice. (R. 20-22.) The ALJ further noted Plaintiff's post-onset date work as a part-time mechanic, as well as his daily activities (which include riding a bike, meal preparation, shopping, and cleaning). (R. 17, 22.) Relying on this record, along with the absence of any treating or examining source assessment of functional limitations that would preclude the performance of all work-related activity, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. 22).

Plaintiff contends that the credibility assessment is faulty because it fails to take into account Plaintiff's mental limitations when discussing non-compliance. It is true that "[w]hen a plaintiff refuses to follow a treatment regimen, the refusal must be reasonable, but the 'reasonable man' standard, which is normally used in determining justifiable cause for refusal, is clearly not applicable to those persons who, because of mental impairments, are not 'reasonable.'" Belen v. Astrue, No. 08 CIV. 10303 PGG, 2011 WL 2748687, at *13 n. 13 (S.D.N.Y. July 12, 2011) (internal quotation and punctuation omitted); see also 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). However, "[t]he fact that the ALJ did not explicitly reference Plaintiff's alleged mental impairments as a cause for noncompliance does not mean that it was not considered." Weed Covey v. Colvin, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015). Moreover, while "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice," Cornell v. Astrue, No. 11-CV-1064, 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013) (citations omitted), Plaintiff's records indicate that he generally possessed normal cognitive function and judgment, except possibly during a brief inpatient hospitalization. (See R. 235-38.) "Thus, there has been no good reason proffered by [Plaintiff] as to why [he] failed to" follow his doctors' advice. Frawley v. Colvin, No. 5:13-CV-1567 LEK/CFH, 2014 WL 6810661, at *11 (N.D.N.Y. Dec. 2, 2014). Accordingly, Plaintiff is not entitled to reversal or remand on this ground.

13.   For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: March 29, 2016
      Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      United States District Judge